May it please the court, my name is Anders Johnson. I'm representing the Pope, Aung Myint Yiu. He's a matter of him seeking for withholding removal with regard to his persecution on account of the one child policy as well as his membership in the Mormon church in New York. He's on condition that there was evidence to support an adverse credibility ruling. Let's back up a minute. This begins with, your statement of the case begins with this is an asylum case. Is it an asylum case? It is not. It's an erroneous statement, okay, because of the one year problem. That's correct. And the basis for the persecution is his membership in the Mormon church. Basically, I want to say tortured, but basically he was persecuted with regard to being detained for 14 days by the Chinese authorities. He also was, well he testified he was beaten up. And yet that's I think one of the more serious problems because in his written statement he identified his torturers, the people that beat him up, as the police. In his testimony he said it was the other inmates. Well, I think that's a pretty glaring difference. Well, in his statement, you know, when he says that he was inhumane and tortured, he goes right on in the same sense to talk about the inmates that he was with who would beat him up on several occasions, leaving him with bruises on his arms. So I think perhaps it's a more recorded written statement rather than that he's saying that he was not tortured or that he was tortured by the police only. But counsel, if I may ask, don't these inconsistencies where it was the police or the inmates go to the very part of his claim? In his testimony he never, there's an issue as to the statement of whether he was handcuffed, shackled, or conned in that statement. He never testified to that. I think it's, and there's, even in the, the immigration judge was questioning whether or not that was an error in terms of Dr. O'Meara, who was the psychiatrist. And what does the doctor have, I thought you made it clear what the doctor was to deal with the asylum timeliness question. Well, there was a statement in the doctor's report which stated that he was being involved in an incident where he had been shackled and a metal baton was used on his legs. The court used that as an additional evidence of an inconsistent statement in that he told the doctor that this had happened earlier but did not testify to that. And the judge, immigration judge, did indicate that could be an error on the part of the doctor. What could be an error on the part of the doctor? In that perhaps it was not. How can you make up such details? I mean, a doctor. You don't know. I would submit I don't know. So with an array of questions and I don't knows and maybe this explains it, how can we say that the immigration judge's decision was not supported by substantial evidence? How can we say that the evidence compelled a different result if even you acknowledge some of these things are just kind of, I don't know. Because I think if the testimony overall in the individual hearing that was held. But what matters is where he's not consistent. And that would be with regard to the one issue which is the. Isn't that substantial evidence sufficient to support a determination by the immigration judge? Our review here is for substantial evidence, not whether we would reach a different decision. But at the same time. I. Immigration judge never. Or did the district council in terms of why he made this statement or even a doctor? At the same time. Testimony. Statements is the fact that. I don't think. The waiver in the end was accepted. The judge did make specific findings. And the documents presented the judge also made a legal conclusion denying that claim. He's talking about that, as I understand it, more to suggest that this. This wasn't in general telling the truth. But where did he come up with any holding on the on the. He states it did not constitute past. I'm sorry. Respondent from counsel waived any claim based on course of family. That's on page 16 of his oral decision. Page six. The court goes on to actually go through the claim. The nation claims. I. Determined the sterilization voluntary. So there are potentially two separate grounds. One of them being waiver. The other. It's a loser anyway. Well, you challenged the waiver ground. I believe that because the judge ended up. Ignoring. He didn't ignore. He. Look out for you. Expressing ways. Did you not. Sorry. You expressly waived any claim based upon sterilization. Did you not. That was done in trial. Yes. My. My argument is that the judge ended up. Me. And that. Therefore, the claim was. Even on appeal preserved. Sterilization. Voluntary. To keep their power in their. Watering and have the children go to school, which is not a very voluntary. Nation. We would submit that the judge. Actual factual determination. Was this issue raised to the BIA? Yes, it was. Where. It was raised. I apologize. I didn't bring my. Other than the credibility. There was a discussion with regard to. With regard to the. Policy sterilization issue. And. He qualified. For asylum. As I recall. You make. You say the issue. In your brief to the BIA. And. In. This court. Is that correct. Thank you. Now. I'll reserve it. May it please the court. Rebecca Hoffberg. On behalf of the attorney general. The respondent. Mr. Excuse me, counsel. Before you begin. You can see. That we have jurisdiction. Under the. BIA. You do not have jurisdiction over the asylum application. As Judge. Burzon. Correctly pointed out at the beginning. He did not dispute the timeliness. Of the asylum application. He erroneously states in his brief. That this case is about asylum. It's not. As Judge. Burzon pointed out. So you do not have jurisdiction. Over the asylum application. You would have jurisdiction. To review for substantial evidence. Whether the record compels a conclusion. Other than the one. Found by the immigration judge in the board. As to the withholding. And cat claims. Thank you. I just wanted to clear that up. Thank you. So. Mr. You sought. Initially he did seek asylum. Withholding of removal. And cat protection. His claim was found to be insufficient. By first an asylum officer. Then an immigration judge. And then the board. They all came to the same conclusion. That he was ineligible for relief. Specifically. He said during his hearing. Before the immigration judge. That he would not be pursuing. The family planning policy. Claim as a basis of persecution. He specifically weighed that claim. And made it very clear. As your honors have pointed out. He did weigh that claim. The immigration judge used it. Actually as a basis. To support the adverse credibility finding. With respect to that sterilization claim. At one point he claimed on page 100. That he was sterilized. Page 104. He also did go on and decide. For some reason. I don't know if that makes a difference. It doesn't your honor. He was discussing it because. He would continue to talk about this claim. Despite the fact at the beginning of the hearing. He made it very clear. On page 74. When specifically asked what is the theory. Or what are the theories for your claim for relief. He says basically your honor. It's religious persecution. And that's what he says. In addition to specifically waiving. He also affirmatively said. We do have a line of cases that say. That if the IJ and the BIA decide a question. Then that's sufficient exhaustion. And in a way it is. It's peculiar because. The whole point of a waiver is. No never mind. You don't have to spend your time on it. We don't know what your views are. Here we do know what their views are. Because he did decide it. I don't know. The BIA I don't think specifically addressed it. But he did. The IJ did at some length. But not to any extent. Other than to say that these were the facts. That were presented. Or the alleged facts presented. That the woman allegedly submitted to sterilization. Was dismissed from her job. But that was over ten years ago. And that Mr. Yu was able to find work. So he was really just recounting. That the testimony that was presented. At the hearing. Which is part of what the IJ does in his decisions. Is just recount what was said. He wasn't doing it in any way. He was doing it. Just in the sense of passing through. This is what was found. You know. And that this wouldn't be anything sufficient. You know. That would warrant further consideration. Especially considering that he weighed it. So I think the IJ may have been just trying to cover his bases. In addressing everything in his decision. But really he was not making any finding on that. After Petitioner explicitly weighed that claim. And so that is not part of what this court is reviewing. This court is reviewing his religious persecution claim. Based on his alleged participation in the Mormon church. Now there is substantial record evidence. To support the immigration judge's adverse credibility finding. For example. These are blatant examples. On page 174 of his written affidavit. He says he was tortured. Tortured by the police. Page 114 and 120 in his testimony. He described being mistreated by his fellow inmates. He first testified on page 97. That the police did not know about the inmate assaults. But then testified on page 114 and 120 to 121. That they did know. Then he said on page 121. That he never reported these incidents. Then on page 228. He told his evaluating doctor. That the police handcuffed and tortured him. As he elected to put a rug on his legs. Then on page 99 in his testimony. He said he was not restrained at all. And the only mistreatment he endured by the police. Was being pushed and kicked. Then on page 114. He was specifically asked at his hearing. On page 113 to 114. Is this all the police did? He answered yes. Then he testified on page 98 to 119. That the police held food on precisely two occasions. That is what had happened. In terms of physical beating. While he was in detention. But he never said anything inconsistent. With the fact that he was detained for 14 days. I'm sorry. Can you repeat that? He never said anything inconsistent. With the notion that he was detained for 14 days. Yes, your honor. But this court has held. For example. In N.L. Sahir versus I.N.S. That even arrests and brief detentions. That result in little or no physical harm. Do not rise to the level of. Wasn't that brief? It was 14 days. I don't think we have a case saying. A 14 day detention either. As far as a detention. It wouldn't be sufficient. Well there were cases. We don't even know that the detention happened. And just because. That part may have been consistently. While he said 14 days. All the times. There's so much that's inconsistent. That if you disbelieve so many other things. You can disbelieve the entire. You can discredit the entire story. That he was beaten by the police. Your honor. The agency arguably found. That that didn't even occur. And so you know. It's hard to determine. There are so many inconsistencies. In the record your honor. You can choose any one of them. They're all material. And go to the heart of the claim. Because they all have to do. With the alleged mistreatment that he. You know that he claims that he experienced. During that detention. And so any one of them. Could be sufficient. But the fact that there are so many of them. Is overwhelming evidence. For an adverse credibility finding. And this. Both his own affidavit. And what he supposedly reported to the doctor. Now opposing counsel says. Well I don't know if the doctor made that up. And as your honor pointed out. Why would the doctor make up something. That he told him. And if he did. I mean that just further discredited his case. You know if you have a doctor. That reports incorrect information. You can't credit anything the doctor would have said. And so that did not help his case at all. And it just offered more inconsistencies. As did the sterilization thing. First he was sterilized. Then he said no I wasn't. It was my wife. And so arguably that whole claim fell apart. As soon as he was completely contradictory. In terms of what happened with that claim. Now as far as the. It was also. Given the opportunity. He was confronted with these inconsistencies. He was asked to explain. And in fact a specific explanation. Was completely unresponsive. You know he was asked. How did the police know that you were beaten. Well my wife told me. That the inmates were demanding money. Which just totally did not answer the question. And that was on page. And immigration judge. Noted all of these things. And then the immigration judge. Did go ahead. And say. You know he did make that finding. Like you said that. We're talking about a 14 day detention. And that type of thing. And then he said well there is no evidence. That he would have experienced torture. But then in his testimony. What he said was being pushed and kicked. And that was hardly anything. That would rise to the level of torture. And so. That also. That would cover the cat claim. And then as far as the persecution. Also there was no mistreatment. And what he demonstrated. Was not anything that would rise to the level. Of persecution. And especially because he was claiming. That he was fired from work afterwards. And you were kept in detention for 14 days. And he was pushed to the table. And he was kicked. Would that be sufficient to be persecution? Your Honor. The judge found that it was not usually. Your Honor did he not find anything about that? Well what the immigration judge. Did say that. And this is on page 60 to 61. That he was kicked a few times. And suffered no injuries. The fact that he didn't. Have anything injurious enough. That warranted further notice. Or medical attention. Or anything that this happened. Which Your Honor. Arguably none of this happened. So this was only the immigration judge. Do we need to accept that. To deny relief here. In other words. I'm far from certain that keeping somebody. In prison for 14 days. On a restricted diet apparently. And kicking him and pushing his head. Isn't persecution. Does that matter to this case? Well Your Honor. The fact is that. He was determined of a future persecution. Doesn't matter. In other words. Is that a pertinent finding. Or is the ultimate finding here. That he wasn't believable in general. And I don't even know if that happened. Well that's certainly what the government would contend. Is that there is so overwhelming evidence of. Incredibility that the court should not even. Reach the issue of what would constitute persecution. In this case. Past persecution. And the fact is with respect to showing his eligibility. He would have to show future persecution as well. Because there was nothing in the evidence. That showed that he would. Experience future persecution. Nothing ever happened to him after his release. And he remained in China for a year after that release. And nothing happened to him during that time. And there's no evidence to suggest. That the Chinese government is aware. Of what he's been doing. Or that he would go back and practice this religion. So there's absolutely no evidence. To support an objectively reasonable. Or I should say. More likely than not. Clear probability standard. Of what he would show. And certainly nothing that would amount to torture. Especially considering he's saying. It wasn't Bayer with the acquiescence of the police. He's saying it was the inmates now. That did that. And that the police didn't know about it. Or maybe they did. But again it's all an adverse credibility finding. In the first instance. Where did the district of the IJ find. The respondent. Not credible. In general. As opposed to. Credible with regard to the story. About his not being able to find a job afterwards. And. Not credible about. The sterilization. Yeah. It's on page 28. And it's specifically labeled credibility. And then he. He underlines the credibility in there. And then goes on to discuss it. There were substantial. He made the same mistake. But you see the one thing he never says. Is that he wasn't. Been arrested for 14 days. He never said he says. The inconsistent statements pertain to the alleged. This treatment while in police custody. And to the alleged sterilization. And. Then. Top of page 60. Is probably the closest thing to a general statement. But I see. Top of page 60. 16 of the decision. The respondent's testimony. Regarding. His detention. His wife sterilization. Credible testimony. Reliable. Has no idea. What if anything happened to the respondent. Or his wife in China. Right. Exactly. And we cited in our brief. For the principle that. If you find no support. You know if you find an adverse credibility. Finding as to one you can find it. And I think that was weighing versus. And so as long as. One of the immigration judges material. Goes to the heart of the claim. You can discount the story in its entirety. Which is clearly. I think what the immigration judge was getting at. Based on the overwhelming number of inconsistencies. Thank you very much for. I wanted to go back. Briefly to the waiver. Issue. Which issue. I'm sorry. I'm sorry. The waiver. Waiver issue on page 61 of the transcript. The judge. Responded. Did not. And then he goes on to indicate that. Sterilization his wife. Was in fact voluntary. And that's based in part. Upon the. Well. Based on in part. Sterilization document. As well as the. The question is. If a. I.J. makes a. Ruling in the alternative. He says. A. There's waiver. B. There weren't. Why. Doesn't the waiver hold. Anyway. I mean. It's rare. To see a more express waiver. Absolutely. Lucy. But at the same time. There was testimony. It was taken. With. There was testimony. Not only. This question. From the judge. His counsel. As well as. The government council. With regard to this issue. Even if you say. Even after the waiver. And then the judge actually. Based on that. Based on. This question. What happens. If there are alternative. Holdings. One in the marriage. And one procedural. With regard to exhaustion. I believe that the court. Will. Believe that. We have a case. Thank you counsel. The case of. Versus. Argument.
judges: Dw Nelson, Berzon, Clifton, Cjj